**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0797n.06

**No. 10-5509**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| GC FINANCE, LLC, a Delaware limited liability company, | ) ) ) | **FILED**<br>*Nov 29, 2011*<br>LEONARD GREEN, Clerk |
| Plaintiff-Appellant, | ) ) |  |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation, | ) ) ) ) | MIDDLE DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) |  |

Before: GIBBONS and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

SUTTON, Circuit Judge. In this title-insurance dispute, the insured (GC Finance) challenges the district court's grant of summary judgment to the insurer (Old Republic National Title Insurance Company). Because the underlying dispute concerns an easement that was excluded from the title policy's coverage, the district court properly rejected the claim as a matter of law. We affirm.

I.

On July 1, 1998, Old Republic issued a title insurance policy to GC Finance covering property in Brentwood, Tennessee, including a golf course. The policy applied to losses due to

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

"[a]ny defect in or lien or encumbrance on the title" of the covered property, and it obligated Old Republic to "pay the costs, attorneys' fees and expenses incurred" in defending GC Finance against "litigation in which any third party asserts a claim adverse to the title or interest as insured." R.1-1 at 2-3.

The policy contained several exclusions, as insurance policies often do. One exclusion applied to a 1953 easement, known by the parties as the Edmondson easement, granted to Columbia Gulf with respect to a stretch of land that runs over the golf course owned by GC Finance. The Edmondson easement gave Columbia the right to "lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace" the pipeline on the property and to lay any additional pipeline there. R.1-5. It also gave Columbia access to the property for all of these purposes.

In 1997, Columbia and a predecessor in interest of GC Finance altered the Edmondson easement through a "Partial Release of Right-of-Way Agreement." Through the partial release, Columbia gave up its rights in the golf course property save for a strip of land 175 feet in width, which ran across portions of the golf course (the "encumbered strip"). Other than releasing the land outside the encumbered strip, the partial release says that it does not affect the validity of the Edmondson easement.

In 2004, Columbia tried to enter the encumbered strip to prepare for a pipeline upgrade. *GC Finance, LLC v. Old Republic Nat'l Title Ins. Co.*, No. 3:06-0913, 2008 WL 4525419 at *3 (M.D. Tenn. Sept. 30, 2008) (facts incorporated by amended opinion, 2010 WL 1408823 at *1 (M.D. Tenn. Mar. 31, 2010)). GC Finance denied access, complaining that the construction would disrupt the

- 2 -

peak golfing season. *Id*. Invoking its rights under the Edmondson easement, Columbia sued GC

Finance in Tennessee state court. GC Finance asked Old Republic to defend the lawsuit, and the title

company refused. *Id*. at *3.

GC Finance defended itself in the state court proceeding, arguing that Columbia needed to

schedule its repairs at a time that did not conflict with the golf season (though when that would be,

given the temperate climate of Nashville, Tennessee, is never disclosed). The trial court disagreed.

It ruled as a matter of law that the proposed delay interfered with Columbia's unrestricted rights

under the easement. *Id*. at *4. The Tennessee Court of Appeals affirmed. *Id*.

GC Finance sued the title company in federal court, invoking diversity jurisdiction and

claiming that the title company had breached the insurance contract by refusing to defend GC

Finance and by failing to indemnify it for damages caused by Columbia's work on the pipelines. *Id*.

The parties filed motions for summary judgment, and the court ruled for Old Republic. *GC Finance

v. Old Republic Nat'l Title Ins. Co.*, No. 3:06-0913, 2010 WL 1408823 at *6 (M.D. Tenn. March 31,

2010).

II.

This appeal presents one issue: Did the title policy obligate Old Republic to defend GC

Finance in the underlying state court litigation? Under Tennessee law, an insurer's duty to provide

a defense turns on the allegations made in the third party's complaint, not on the insured's or for that

matter the insurer's say-so. *First Nat'l Bank in Bristol v. South Carolina Ins. Co.*, 341 S.W.2d 569,

570 (Tenn. 1960); *Graves v. Liberty Mut. Fire Ins. Co.*, 745 S.W.2d 282, 283 (Tenn. Ct. App. 1987). If a claim reasonably falls within the scope of the insurance policy's coverage, the insurer must defend. *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007).

The problem for GC Finance, as the district court correctly recognized, is that the insurance policy by its terms does not apply to this dispute. Columbia's complaint pointed out, quite correctly, that it had a right of access to the property under the Edmondson easement, which the title policy excluded from coverage. The complaint added that GC Finance had informed Columbia that none of its representatives would be permitted onto the golf course property "for any matter related to any upgrade" of the pipeline. R.1-4 at 13. And it said that agents of GC Finance had denied access to two of Columbia's employees, who were attempting to review the property in preparation for the upgrade. Columbia alleged that this conduct:

> constitute[d] a breach of, and interference with, Columbia's property and contractual rights, including without limitation Columbia's rights under the [Edmondson Easement], as modified and amended by the Partial Release, to maintain, alter, replace and upgrade Columbia's Pipelines and have ingress to and egress from the Subdivision Property for same.

*Id*. at 14. Columbia sought declaratory, injunctive and monetary relief arising from GC Finance's denial of access.

The state-court complaint turned on the Edmondson easement, the language of which leaves little room for maneuver. In clear terms, the easement allows Columbia access to the golf course for several reasons, including the one used here: upgrading the pipeline. In the words of the complaint,

- 4 -

the easement granted Columbia "a right-of-way and easement to construct, lay, . . . alter, . . . change the size of, and replace [its] pipelines" on GC Finance's property with the right of "ingress to and egress from the premises for the purposes herein granted." R.1-4 at 6–7. The easement does not mention any restriction on timing, let alone timing relating to the golf season, and it does not require the parties to reach an agreement before Columbia enters the property. GC Finance nonetheless refused entry, a choice it was free to make but not one it could saddle the title company with defending on this contract.

GC Finance tries to sidestep all of this by relying on the partial release. Yet the partial release from the outset was an amendment to, and limitation on, the Edmondson easement, not an elimination or expansion of it. As the partial release made clear, it otherwise remained subject to the Edmondson easement, noting that the partial release "does not constitute . . . a release or surrender . . . of any of [Columbia's] right . . . to that portion of the land not expressly released herein." R.1-3 at 3. As relevant here, what was true before the partial release was true after it: The Edmondson easement granted Columbia access to the encumbered strip for upgrading its pipelines, and Old Republic excepted that easement from title coverage.

Nor does it make a difference that the title insurance policy mentions the Edmondson easement by name but not the partial release. As its title suggests, the release partially cuts back on the coverage of the Edmondson easement rather than expanding it, and the easement otherwise has no effect on Columbia's right to access the encumbered strip, as the release itself says. At the end

- 5 -

of the day, it is the Edmondson easement that furnishes Columbia with the right to access the golf course and upgrade its pipelines, and the insurance policy excludes that easement from coverage.

GC Finance insists that the insurance policy is ambiguous about whether it excludes the partial release and that this ambiguity should be construed against Old Republic, the drafter of the policy. But this canon of interpretation applies when the provision is "susceptible of more than one *reasonable* interpretation," not when one party takes a litigation stance proposing another construction that has no support in the contractual language. *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001) (emphasis added); *see Simonton v. Huff*, 60 S.W.3d 820, 825 n.3 (Tenn. Ct. App. 2000). The terms of the title policy in this instance permit just one interpretation: The Edmondson easement, even after modification by the partial release, required GC Finance to admit Columbia's personnel onto the golf course in order to upgrade the pipeline. Because the title policy excluded the Edmondson easement from coverage, Old Republic had no duty to defend GC Finance in the underlying state court litigation.

III.

For these reasons, we affirm.