IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 21, 2008 Session

## BOOKER T. HOLLOWAY and wife, BRENDA HOLLOWAY
v.
## JAMES C. PURDY and CHRIS PURDY

Appeal from the Circuit Court for Shelby County
No. 95161-2 T.D.    James F. Russell, Judge

No. W2007-02795-COA-R3-CV - Filed May 15, 2009

This appeal involves the Tennessee Uninsured Motorist Act.  The plaintiffs owned a body shop that was insured under a garage owner's policy.  The policy limited its uninsured motorist coverage to vehicles that were owned by the plaintiffs and listed on the policy.  While driving to an auto parts store in a customer's car, one of the plaintiffs was hit by an uninsured motorist and sustained physical injuries.  The plaintiffs then submitted claims to the insurance company that issued the garage owner's policy, and also to his customer's insurance company, seeking recovery under the uninsured motorist provisions of both policies.  After the claims were denied, the plaintiffs filed a lawsuit against the uninsured motorist.  The insurance company that issued the plaintiffs the garage owner's policy filed a motion for summary judgment, arguing that there was no coverage because the policy did not cover the plaintiffs while operating a non-owned vehicle.  The trial court granted the motion for summary judgment.  As a permissive operator, the injured plaintiff was covered under his customer's uninsured motorist policy.  The customer's insurance company settled with the plaintiffs, obtained an assignment of their rights against the insurance company that issued them the garage owner's policy, and then intervened as a third party plaintiff.  The intervening plaintiff now appeals the trial court's grant of summary judgment to the insurer under the garage owner's policy, arguing that the Uninsured Motorist Act prohibits such a limitation.  We affirm, finding that the statute does not prohibit the limitation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and  J. STEVEN STAFFORD, J., joined.

Stephen W. Vescovo, Memphis, Tennessee, for the Intervening Plaintiff/Appellant State Farm Mutual Automobile Insurance Company

Andrew H. Owens, Memphis, Tennessee, for the Uninsured Motorist Defendant/Appellee Clarendon National Insurance Company

**OPINION**

## FACTS AND PROCEDURAL HISTORY

Booker Holloway ("Mr. Holloway") and his wife Brenda Holloway were the owners and operators of a wrecker service and body shop in Memphis. The business was insured under a garage owner's business insurance policy issued by Defendant/Appellee Clarendon National Insurance Company ("Clarendon").

On June 9, 1997, Mr. Holloway was working on a car owned by one of his customers.[1] The customer's vehicle was insured by Plaintiff/Appellant State Farm Mutual Automobile Insurance Company ("State Farm"). In the course of working on the vehicle, Mr. Holloway drove the car to an auto parts store to have the battery checked. On the way, he was struck by a vehicle driven by James Purdy ("Mr. Purdy"), allegedly due to Mr. Purdy's negligence. Mr. Purdy was uninsured and Mr. Holloway sustained serious injuries.

The Holloways submitted an uninsured motorist claim to Clarendon, under the garage owner's policy, and to State Farm, under the customer's policy, pursuant to the uninsured motorist provisions of each policy. Both claims were apparently denied.

On June 9, 1998, the Holloways filed the instant lawsuit against Mr. Purdy, alleging negligence in the vehicular accident. Presumably both State Farm and Clarendon were served[2] because both filed answers to the complaint, citing the provisions of Tennessee Code Annotated § 56-7-1201, *et seq.*

Clarendon filed a motion for summary judgment, asserting that the uninsured motorist provision in the Holloways' garage owner's insurance policy was not applicable because, at the time of the accident, Mr. Holloway was occupying and operating a non-owned vehicle. The trial court granted Clarendon's motion for summary judgment on February 12, 2001, leaving State Farm as the only insurer remaining in the lawsuit.

State Farm subsequently settled with the plaintiffs under its uninsured motorist provision and so the claims against State Farm were dismissed. State Farm preserved its rights against Clarendon by obtaining an assignment from the plaintiffs of their rights against Clarendon and intervening as an additional party plaintiff. On November 2, 2007, the order granting summary judgment to Clarendon was made final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, enabling State Farm to appeal on the issue of the uninsured motorist coverage. State Farm then filed a timely notice of appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

---

[1] The customer was Larry Finch, former player and head coach of the Memphis State (now the University of Memphis) men's basketball team.

[2] Pursuant to Tennessee Code Annotated § 56-7-1206(a), the plaintiffs would serve State Farm and Clarendon in order to assert the uninsured motorist claims against them. Under the statutory provisions, State Farm and Clarendon then had the right to file pleadings in their own names. T.C.A. § 56-7-1206(a) (2008).

The only issue on appeal is whether the trial court erred in granting Clarendon's motion for summary judgment. This turns on whether the Tennessee Uninsured Motorist Act, codified at Tennessee Code Annotated § 56-7-1201, *et seq.*, allows an insurance company to write a policy of insurance in the state of Tennessee that limits its uninsured motorist coverage to situations in which the insured is driving or occupying a listed automobile under the policy.

Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citation omitted). Therefore, our review is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997) (citation omitted). In reviewing a trial court's grant of summary judgment, the appellate court is to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000) (citations omitted). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04.

### ANALYSIS

In Tennessee, statutory provisions governing insurance policies become part of the insurance contract. *Sherer v. Linginfelter*, 29 S.W.3d 451, 453–54 (Tenn. 2000) (quoting *Hermitage Health & Life Ins. Co. v. Cagle*, 420 S.W.2d 591, 594 (Tenn. Ct. App. 1967)). This includes provisions relating to uninsured motorist coverage. To the extent that a conflict arises between the statute and a provision of the contract, the statute will prevail. *Fleming v. Yi*, 982 S.W.2d 868, 870 (Tenn. Ct. App. 1998) (citing *Dunn v. Hackett*, 833 S.W.2d 78, 82 (Tenn. Ct. App. 1992)). This is not to say that no contractual limitations are permitted. The statute expressly states that "[t]he forms of coverage may include terms, exclusions, limitations, conditions, and offsets that are designed to avoid duplication of insurance and other benefits." T.C.A. § 56-7-1205 (2008); *see Thompson v. Parker*, 606 S.W.2d 538, 540 (Tenn. Ct. App. 1980). These limitations, however, must not conflict with the uninsured motorist statute and must not offend public policy. *Ragsdale v. Deering*, No. M2004-00672-COA-R9-CV, 2006 WL 2516391, at *3 (Tenn. Ct. App. Aug. 30, 2006) (citing *Dockins v. Balboa*, 764 S.W.2d 529, 530 (Tenn. 1989)). In addition, any ambiguities in the limitations will be construed against the insurance company, as the drafter of the policy. *Id.* (citing *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993); *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991)).

In the case at bar, there is nothing ambiguous about the limitation. "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson v. Johnson* 37 S.W.3d 892, 896 (Tenn. 2001) (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)). The present policy cannot be fairly understood in more than one way. The policy clearly states that

> Each of these coverages will apply only to those "autos" shown as covered "autos."
> "Autos" are shown as covered "autos" for a particular coverage by the entry of one

or more of the symbols from the COVERED AUTO Section of the Garage Coverage
Form next to the name of the coverage.

The uninsured motorist coverage has the symbol "27" next to the type of coverage provided. The symbol "27" refers to "Specifically Described 'Autos.' " These are the autos that are specifically described in the policy as covered vehicles owned by the insured. In this case, the Holloways had three vehicles specifically listed. Thus, coverage under the uninsured motorist provisions of the policy is expressly limited to the three listed vehicles.

State Farm argues that the uninsured motorist provisions of the policy issued by Clarendon were intended to, and should be interpreted to, cover Mr. Holloway when he is driving a non-owned vehicle. State Farm points to Mr. Holloway's deposition testimony, in which he states that he believed that he was covered while driving a non-listed vehicle. Mr. Holloway also testified that the insurance agent who sold him the Clarendon garage owner's policy was aware that he drove customers' vehicles in the course of his business. State Farm maintains that this testimony supports its argument that the Clarendon policy covered Mr. Holloway in this situation.

We disagree. Insurance contracts are construed like other contracts, so as to give effect to the express language and the intention of the parties. *Harrell v. Minn. Mut. Life Ins. Co.*, 937 S.W.2d 809, 814 (Tenn. 1996) (citing *Tata*, 848 S.W.2d at 650). The words should be given their express meaning unless some other meaning is clearly provided in the insurance policy. *Id.* (citing *Elsner v. Walker*, 879 S.W.2d 852 (Tenn. Ct. App. 1994)). Here, the language of the policy clearly limits uninsured motorist coverage to owned vehicles listed in the policy. Although any ambiguity will be construed in favor of the insured, the Court will not create ambiguity where none exists. *See Ragsdale*, 2006 WL 2516391, at \*3 (citations omitted); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) (citation omitted). Mr. Holloway's statement to the effect that he assumed coverage existed does not establish ambiguity. The Tennessee Supreme Court has stated that " 'the insured is conclusively presumed to have knowledge of, and to have assented to, all the terms, conditions, limitations, provisions or recitals in the policy,' irrespective of whether the insured actually read, or could read, the insurance contract." *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 274 (Tenn. 2001) (quoting *General Am. Life Ins. Co. v. Armstrong*, 185 S.W.2d 505, 506–07 (Tenn. 1945)). We hold, then, that the Clarendon garage owner's policy unambiguously limits its uninsured motorist coverage to the vehicles listed in the policy.

In light of this holding, the issue becomes whether such a limitation conflicts with Tennessee's Uninsured Motorist Act or is in violation of public policy. If the limitation is prohibited by the Act, then Clarendon admits that its policy is primary pursuant to Section 56-7-1101(b).[3]

---

[3] Subsection (b) states in pertinent part:

[W]hen any non-owned vehicle is in the possession, custody or control of a person who is in the business of storing, parking, servicing or repairing vehicles, then any insurance available to the owner

(continued...)

-4-

In construing a statute, this Court's role is to try to ascertain the intention of the legislature. *See McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002) (citing *Mangrum v. Owens*, 917 S.W.2d 244, 246 (Tenn. Ct. App. 1995)). "Legislative intent is derived from the plain and ordinary meaning of the statutory language unless the statute is ambiguous." *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (citing *State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000); *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). A statute is ambiguous if it is "capable of conveying more than one meaning." *Id.* (quoting *LeTellier v. LeTellier*, 40 S.W.3d 490, 498 (Tenn. 2001)). If the statute is ambiguous, to construe it, we look to the statutory scheme in an effort to discern the legislative intent. *Id.* (citing *Owens*, 908 S.W.2d at 926). Our determination of the legislative intent should be based on "a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning. " *Id.* (quoting *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)). "Component parts of a statute are to be construed, if possible, consistently and reasonably." *Id.* (citing *State v. Alford*, 970 S.W.2d 944, 946 (Tenn. 1998)).

State Farm argues that the limitation in Clarendon's policy, limiting the uninsured motorist coverage to owned, listed vehicles, is prohibited under the Uninsured Motorist Act and under public policy. In support, State Farm relies on two provisions in the Act. We first address State Farm's argument that the provision of the Act governing the priority of recovery prevents such a limitation. This provision provides as follows:

> (b)(1) With respect to bodily injury to an insured, at a time when the insured is not occupying any motor vehicle, the insurance on the vehicle under which the injured party is an insured with the highest limits of uninsured motorist coverage shall apply, and no other uninsured motorist coverage shall apply. . . .
> * * *
> (3) With respect to bodily injury to an insured while occupying an automobile not owned by the insured, the following priorities of recovery under uninsured motorist coverage apply.

T.C.A. § 56-7-1201(b)(1), (3) (2008).

State Farm insists that the statute mandates that, when an insurance company issues an automobile insurance policy containing uninsured motorist provisions, there must always be coverage for an insured who is a permissive occupant regardless of whether he or she is occupying a non-owned vehicle or even if the insured is not occupying a vehicle at all. State Farm argues that, for a limitation such as that in the Clarendon policy to be permitted, the language of the statute would have to state in effect: "If the uninsured motorist coverage provides coverage for an insured while occupying a non-owned vehicle, then the following priorities of recovery under the uninsured motorist coverage shall apply." Otherwise, State Farm argues, subsection (b) would be meaningless.

---

[3](...continued)
shall not be applicable unless and until all insurance that is available under a garage policy of the person in possession has been exhausted.

T.C.A. § 56-7-1101(b) (2008).

We must respectfully disagree. Section 56-7-1201(b) appears directed at determining the *priority* of recovery from the applicable policies, if any. The cited section does not prohibit an insurance company from limiting its uninsured motorist coverage to instances in which the insured is occupying an owned, listed vehicle. If the legislature intended to prohibit such a limitation, it could have made its intent plain.

State Farm also asserts that, under Section 56-7-1201(a)(2), a named insured may reject uninsured motorist coverage completely or select lower limits, but may not select different types of uninsured motorist coverage.[4] State Farm insists that the statute does not permit the rejection of uninsured motorist coverage for non-owned vehicles. Therefore, State Farm argues, once Clarendon extended uninsured motorist coverage to the Holloways, they received uninsured motorist coverage for both owned and non-owned vehicles.

We must reluctantly disagree. We acknowledge that the thought of a garage owner's insurance policy that limits coverage to owned, listed vehicles seems anomalous. However, the statute explicitly allows limitations designed to avoid duplicate coverage. *See* T.C.A. § 56-7-1205 (2008). In this case, the customer's car driven by Mr. Holloway at the time of the accident was insured under an automobile policy with uninsured motorist coverage that applied to cover Mr. Holloway. If we were to determine that the limitation at issue conflicts with the provisions of the Uninsured Motorist Act, that would result in coverage under two policies, with the policy issued by Clarendon as the primary policy.

The Tennessee Supreme Court has interpreted the statutory provision allowing for exclusions and limitations designed to avoid duplication of insurance coverage. In *Hill v. Nationwide Mutual Insurance Co.*, 535 S.W.2d 327 (Tenn. 1976), the plaintiff was injured while operating his brother's motorcycle. *Id.* at 328. At the time of the accident, both the plaintiff and his brother lived with their parents. *Id.* The plaintiff sued the owners of the other vehicle involved in the accident and was awarded a judgment, but the defendant vehicle owners had no liability insurance. *Id.* The motorcycle was insured under a separate policy issued to the plaintiff's father. Unfortunately for the plaintiff, when his father obtained the policy on the motorcycle, he declined uninsured motorist coverage. *Id.* With no uninsured motorist coverage under the policy on the motorcycle, the plaintiff attempted to recover under the uninsured motorist provisions in his parent's uninsured motorist policy. *Id.* However, the uninsured motorist provisions in the family policy contained an exclusion, stating that the policy would not apply to injury "to an Insured while occupying a land motor vehicle (other than an insured land motor vehicle) owned by a Named Insured or any relative resident in the same household." *Id.* The plaintiff sued the insurance company that issued the family policy, arguing that the exclusion was contrary to Tennessee Code Annotated § 56-1148, the predecessor to the current Section 56-7-1201; the trial court upheld the exclusion, and the plaintiff appealed. *Id.*

---

[4] This section provides in pertinent part as follows: "[A]ny named insured may reject in writing the uninsured motorist coverage completely or select lower limits of the coverage but not less than the minimum coverage limits in § 55-12-107." T.C.A. § 56-7-1201(a)(2) (2008).

The Tennessee Supreme Court likewise upheld the resident relative exclusion. *Id.* at 332. The Court noted that, had uninsured motorist coverage been purchased on the motorcycle, the plaintiff would have been covered, and the resident relative exclusion would have operated so as to avoid "duplication of insurance" as authorized in the statute. *Id.*; *see* T.C.A. § 56-7-1205 (2008). The Court did not "attach controlling significance" to the fact that it was the plaintiff's father, who was the named insured under the policy at issue, who had rejected uninsured motorist coverage on the motorcycle. *Hill*, 535 S.W.2d at 332. Despite the fact that there was no duplication under the facts presented, and that application of the exclusion resulted in no coverage being available to the plaintiff, the Court observed that "[t]he statute does not speak in absolute terms." *Id.* Rather, the statute permits exclusions that "are designed to avoid duplication," adding,

> Under all of the circumstances, therefore, we are unable to say that the policy provision in question was not "designed" to avoid such duplication, or that it so conflicts with the underlying purpose of the uninsured motorist statutes, as construed in this state, that it must be deemed illegal and void.

*Id.*

In the present case, the limitation in the Clarendon policy, like the exclusion in *Hill*, appears designed to avoid duplication of coverage. Unlike the plaintiff in *Hill*, Mr. Holloway was driving a customer's vehicle that had uninsured motorist coverage, and consequently the limitation served to avoid actual duplication of coverage. Regardless, as the *Hill* case points out, actual duplication is not necessary for the limitation to be valid, only that it be "designed" to do so. That appears to be the case here. Therefore, the exclusion is not contrary to Tennessee statutes.

State Farm also contends that the limitation in the Clarendon garage owner's policy violates Tennessee public policy. The Tennessee Supreme Court has described the policy underlying the Uninsured Motorist Act as follows:

> Our uninsured motorists statute was enacted in response to the growing public concern over the increasing problem arising from property and personal injury damage inflicted by uninsured and financially irresponsible motorists. Its purpose is to provide, within fixed limits, some recompense to . . . persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages.

*Tata*, 848 S.W.2d at 654 (citation omitted). State Farm cites no authority indicating that application of the exclusion in the Clarendon policy under the facts of this case would violate the public policy of the state, and we have found none. Under all of these circumstances, we find no error in the trial court's grant of summary judgment in favor of Clarendon.

## CONCLUSION

The decision of the trial court is affirmed. Costs of this appeal are taxed to the appellant State Farm Mutual Automobile Insurance Company, and its surety, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE